ORIGINAL

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GORDON JAMES KLINGENSCHMITT )        NO: **11-723 C**
                           )
                           )
                           )        **FILED**
VERSUS                     )
                           )        NOV - 1 2011
                           )        COMPLAINT
                           )        U.S. COURT OF
THE UNITED STATES OF AMERICA )       FEDERAL CLAIMS
_____)

### COMPLAINT

Now comes before this honorable court plaintiff Gordon James Klingenschmitt, a United

States citizen currently domiciled in the State of Colorado, who by these presents respectfully

avers:

I.

Made defendant herein is the United States of America.

II.

The United States has waived sovereign immunity in this matter pursuant to the Tucker

Act 28 U.S.C. § 1491 and the Military Pay Act, 37 U.S.C. § 204. The matter is brought pursuant

to 28 U.S.C. § 1491(a) for monies due under the Constitution of the United States, an Act of

Congress and/or the regulation of an executive department or in the alternative upon an express

or implied contract with the United States.

III.

The Plaintiff, Chaplain Gordon James Klingenschmitt, was a Trinitarian Christian Lieutenant

in the United States Navy with more than 15 years of active duty in the United States Military.

1

IV.

Chaplain Klingenschmitt was assigned to active duty in the Navy's Chaplain Corps at Norfolk Naval Station.

V.

Chaplain Klingenschmitt entered active duty in the United State Military on July 1, 1986. He achieved the rank of Major (O-4) in the United States Air Force as a Missile Officer.

VI.

On September 2, 2002, Chaplain Klingenschmitt volunteered for a demotion in rank and pay reduction to convert to a Navy Lieutenant O-3 (Chaplain).

VII.

Pursuant to Department of Defense (DOD) Instruction 1304.28, Chaplain Klingenschmitt received an Ecclesiastical Endorsement from the Evangelical Episcopal Church.

VIII.

DOD Instruction 1304.28 requires anyone being considered for appointment as a Chaplain in the Military Departments, a Religious Ministry Professional (RMP) "shall receive an endorsement from a qualified Religious Organization" verifying that the RMP is fully qualified according to the Religious Organization. *Id.* at para. 6. This "Ecclesiastical Endorsement" is confirmed by the filing of a "Statement of Ecclesiastical Endorsement" by the Religious Organization.

IX.

In September 2002, while in Chaplain's School, Chaplain Klingenschmitt was pressured to censor the content of his public prayers if offered outside of Sunday chapel.

2

X.

Chaplain Klingenschmitt was presented with a prayer memo signed in 1998 by the former Chief of Navy Chaplains stating that chaplains who pray publicly "in Jesus' name" are insensitive or incompetent.

XI.

Upon graduation from the Chaplain's School, Chaplain Klingenschmitt was assigned to the *USS Anzio* (CG 68) as the command Chaplain.

XII.

During July 2004, the Commanding Officer of the *USS Anzio*, punished Chaplain Klingenschmitt for quoting "exclusive" Bible verses, including John 3:36, during an optionally-attended sermon in a Protestant chapel at an event advertised as "Christian Memorial Service" to honor the Christian faith of the deceased sailor, a member of Klingenschmitt's flock.

XIII.

Also during July 2004, the Commanding Officer denied Chaplain Klingenschmitt's proposal to share "the evening prayer" with members of diverse faiths and instead pressured Chaplain Klingenschmitt to censor the content of his prayers.

XIV.

The Commanding Officer refused to permit Chaplain Klingenschmitt to practice his religion and claimed that he (and others whom he declined to identify) were offended by Chaplain Klingenschmitt's religious belief, expressed during the sermon, that going through Jesus is the exclusive way to heaven.

3

XV.

On February 18, 2005, Chaplain Klingenschmitt received a downgraded fitness report, for the period ending January 31, 2005, in reprisal for the content of the Chaplain's prayers and sermons, based on his religious beliefs. This report was reflected a decline from the grades and narrative in the previous report signed by the same Commanding Officer.

XVI.

On March 11, 2005, the Commanding Officer  also recommended a Navy board not renew Chaplain Klingenschmitt's contract.

XVII.

These actions were taken solely because Chaplain Klingenschmitt quoted the Bible in chapel and ended his prayers with the words "in Jesus' name."

XVIII.

On April 1, 2005, Chaplain Klingenschmitt was transferred to the Chapel at Naval Station Norfolk.

XIX.

On June 18, 2005, Chaplain Klingenschmitt filed a formal grievance against his former Commanding Officer pursuant to Article 138, Uniform Code of Military Justice, for religious discrimination and improper punishment based upon his exercise of his religion.

XX.

The Naval Chaplain School curriculum promotes the establishment of one "non-sectarian" faith for all Chaplains and all Sailors within the Navy and ridicule Chaplain Klingenschmitt's bona fide religious beliefs.

4

XXI.

On August 23, 2005, then Chief of Navy Chaplains, Rear Admiral Lou Iasiello, declined to rescind his predecessor's 1998 prayer memorandum, which instructed Navy Chaplains that if they pray "in Jesus' name," the "chaplain ought not to participate in the secular event as a prayer giver" yet encouraged participation by Chaplains who pray non-sectarian, unitarian, pluralistic prayers.

XXII.

Iasiello, contrary to a statement he provided to the *Washington Post*, told Chaplain Klingenschmitt that praying publicly in Jesus' name was improper because ending public prayers "in Jesus' name" in all situations, without using discretion or regards to the venue or audience, was claimed by the Navy to reasonably tend to denigrate those with different forms of faith.

XXIII.

On September 14, 2005, Chaplain Klingenschmitt filed a formal grievance pursuant to Navy Regulations, Article 1150, against the Chief of Chaplains, Rear Admiral Louis Iasiello, for religious discrimination concerning the Navy's restriction of the religious content of prayers and pressuring chaplains to pray "non-sectarian" prayers.

XXIV.

The Navy's restriction on the religious content of prayers is contrary to 10 U.S.C. § 6031, which allows Chaplains to conduct "public worship" according to each Chaplain's own faith and in violation of the Establishment Clause of the First Amendment to the United States Constitution.

XXV.

The Navy delayed acting on Chaplain Klingenschmitt's complaint for more than one year, which permitted Admiral Iasiello to retire without addressing the substantive issues in the complaint.

XXVI.

On December 16, 2005, the Commanding Officer of Naval Station Norfolk,  suppressed Chaplain Klingenschmitt's First Amendment speech in an over-broad manner by forbidding Chaplain Klingenschmitt from praying in uniform whenever the media may be present.

XXVII.

When Chaplain Klingenschmitt tried to appeal the unlawful nature of this removal of his rights to the President, by writing to the President on December 15, 2005, a protected communication, members of his chain of command did not forward this appeal as was required.

XXVIII.

As discussed herein, the Navy began a series of negative personnel actions against Chaplain Klingenschmitt in reprisal for his complaints.

XXIX.

Chaplain Klingenschmitt was told by a superior officer that he did not know about the whistle blower laws, did not care what they said, and that he "was not intimidated by your [Chaplain Klingenschmitt's] threats to file an IG complaint" because he had hired a lawyer and would "come after you."

### XXX.

On January 6, 2006, Chaplain Klingenschmitt's Commanding Officer modified his original order and gave him written permission to wear his uniform when participating in a "religious observance."

### XXXI.

On January 7, 2006, Chaplain Klingenschmitt participated in a religious observance in Lafayette Park, across from the White House and said a short prayer while in uniform.

### XXXII.

The media covered that January 7, 2006, religious observance prayer without incident.

### XXXIII.

After the religious observance, Chaplain Klingenschmitt changed out of his uniform into civilian clothing by walking away from the area where the observance had been held and removing identifiable portions of his uniform and replacing them with a clerical collar before making any statements that did not constitute prayer. At no time did he represent that he was speaking for the Navy.

### XXXIV.

On January 11, 2006, Rear Admiral F. R. Ruehe, Commander navy Region Mid-Atlantic, ruled during an administrative procedure that Chaplain Klingenschmitt should not preach and pray as his faith dictated and sustained the actions of the *Anzio's* Commanding Officer.

### XXXV.

Rear Admiral F. R. Ruehe's personal involvement in Chaplain Klingenschmitt's case made him an accuser within the scope of 10 U.S.C. § 1(9), during the subsequent court-martial

7

process.

## XXXVI.

Although never presented with formal counseling concerning any negative performance, on February 3, 2006, Chaplain Klingenschmitt was given a downgraded Fitness Report for the period ending January 31, 2006. This report was in reprisal for his protected communication to the President, other protected communications and his desire to practice his religion in consonance with the Constitution and laws of the United States. His decision to change out of uniform after his recent prayer in Lafayette Park prior to talking with the media, in compliance with the January 6, 2006 order, was specifically criticized.

## XXXVII.

Chaplain Klingenschmitt was specifically told by his Commanding Officer that his on-duty performance was fine, that he added great value to the command in performing his duties, and that the negative comments only related to Chaplain Klingenschmitt's off-duty protected and religious speech.

## XXXVIII.

Chaplain Klingenschmitt was informed by his Commanding Officer that he showed disrespect for the uniform by removing his uniform on January 7, 2006, prior to answering questions in his personal capacity.

## XXXIX.

No regulation supports this statement.

## XL.

On February 21, 2006, in violation of the Establishment Clause, the Navy promulgated a

regulation, SECNAVINST 1730.7C, requiring Chaplains to pray using "non-sectarian" prayer content outside of "Divine Services."  This regulation codified the 1998 prayer memo into a formal policy.  It further barred Chaplains from praying in accordance with their religion except at "public worship," which the Navy narrowly defined as a term of art protected only during divine services at Sunday Chapel and not elsewhere. This policy also re-defined "religious observance" as a term of art only protected on particular holy days.

### XLI.

The regulation impermissibly interfered with Chaplain Klingenschmitt's First Amendment rights to practice his religion and constituted an impermissible establishment of a unitarian pluralistic religion.

### XLII.

On February 28, 2006, Chaplain Klingenschmitt was informed  by his chain of command that the downgraded fitness report was the main reason for the downgrade.  The counseling referenced that letter verbatim.

### XLIII.

On March 22, 2006, Chaplain Klingenschmitt filed a formal protected communication with several Congressmen against the Secretary of the Navy and Iasiello, objecting to SECNAVINST 1730.7C which re-defined "public worship" and "religious observance" and required "non-sectarian" prayers.

### XLIV.

On March 22, 2006, shortly before Chaplain Klingenschmitt's concerns would be reported in the *Washington Times*, the Chief of Naval Personnel, Vice Admiral John Harvey

recommended that Chaplain Klingenschmitt be involuntarily released from active duty because he had challenged Navy prayer policies by writing to the President, his Congressman and allowing media interviews. The Secretary of the Navy refused to involuntarily release Chaplain Klingenschmitt.

XLV.

On March 30, 2006, Chaplain Klingenschmitt, while not on duty, wore his Navy uniform at a prayer and scripture reading event in Lafayette Park, across from the White House.

XLVI.

At the March 30, 2006, religious event, Chaplain Klingenschmitt read passages from the New Testament of the Bible, Acts 4: 18-21. He also led two Christian prayers, one of which was from the Episcopal Book of Common Prayer, the other from the New Testament.

XLVII.

At the March 30, 2006 religious event, Chaplain Klingenschmitt made no speeches or statements and declined to speak to the media in any public forum while he was in uniform.

XLVIII.

At the March 30, 2006, religious event, Chaplain Klingenschmitt declined to make political speeches or answer media questions until he had changed into civilian clothes.

XLIX.

A Navy spokesman made a number of comments in the aftermath of the religious service. He, *inter alia*, conceded that Chaplain Klingenschmitt was reprimanded for the content of a sermon he preached for one of his flock, at a military funeral. He also made a number of uncalled for negative remarks about Chaplain Klingenschmitt.

10

L.

On March 30, 2006, the Navy issued a statement to the press that military Chaplains must be willing to function in a pluralistic society.

LI.

On March 30, 2006, the Navy issued a statement to the press that it was "unclear whether Chaplain Klingenschmitt had violated regulations by appearing at the event in uniform," but that "Klingenschmitt was free to pray there because it was not an official event and he was on leave."

LII.

On March 31, 2006, however, the Office of the Chief of Navy Chaplains complained that Chaplain Klingenschmitt had worn his uniform to pray "in Jesus' name" in front of the White House.  This resulted in a threat to transfer Chaplain Klingenschmitt to Iraq.

LIII.

On April 4, 2006, Chaplain Klingenschmitt sought protection from the Department of Defense Inspector General under the Military Whistleblower Act, 10 U.S.C. § 1034.

LIV.

On May 17, 2006, a single charge and specification of a violation of Article 92, Uniform Code of Military Justice, disobeying a lawful order was preferred against Chaplain Klingenschmitt.

LV.

The matter was improperly referred to a special court-martial on May 18, 2006, by Admiral Ruehe, in violation of 10 U.S.C. § 823(b).

LVI.

On June 6, 2006, Anita Blair, a Military Judge, designated by the Secretary of the Navy to review Chaplain Klingenschmitt's 2004 Article 138 complaint, denied it on behalf of the Secretary.

LVII.

The basis of the denial was that Chaplain Klingenschmitt's complaint of religious harassment is "without merit" because the optionally attended Christian Memorial Service inside the Chapel was not public worship, a worship service, a funeral or even a worship service and not a religious ceremony (according to new SECNAVINST 1730.7C) since it was held on Saturday). This finding did not comport with the training Chaplain Klingenschmitt received.

LVIII.

On July 11, 2006, Chaplain Klingenschmitt was informed that his request for augmentation to the Regular Navy has been held in abeyance pending further review.

LIX.

Augmentation is the conversion from a Reserve status to regular Navy status.

LX.

The decision to deny Chaplain Klingenschmitt's augmentation request violated his statutory entitlement to receive a Regular commission, which Congress had directed the Navy to grant all active duty officers by April 30, 2006.

LXI.

The Navy failed to provide an explanation of why the augmentation was not approved and/or being held in abeyance.

12

### LXII.

On August 31, 2006, the Military Judge ruled that the order from the Commanding

Officer was a lawful order because it was based on SECNAVINST 1730.7C, stating that "public

worship" in 10 U.S.C. § 6031 is a term of art describing a combination of setting, teaching, and

interpretation that constitutes a "divine service."

### LXIII.

The gravamen of the court-martial charge and specification was that Chaplain

Klingenschmitt violated supposedly "lawful" orders (based on SECNAVINST 1730.7C) by

"worshiping in public" in uniform.

### LXIV.

The Military Judge also ruled that "one who reads a biblical verse or who recites a prayer

at The Speaker's Corner in Hyde Park is not engaged in 'public worship,' although he may be

'worshiping in public.'"

### LXV.

On September 13, 2006, Chaplain Klingenschmitt was found guilty, contrary to his pleas,

of disobeying a "lawful" order and was sentenced to reprimand and suspended fine of $3,000.

The court enforced the order, although modified to allow 'religious observance' in uniform, as if

it had never been modified.

### LXVI.

On September 25, 2006, Congress directed the Navy to rescind their policies that required

"non-sectarian" prayer content (including SECNAVINST 1730.7C) by attaching a "conference

report" to the 2007 Defense Authorization Act, restoring the definition of "public worship" and

"religious observance" to their original meaning, protecting all public prayers everywhere.

### LXVII.

The aforementioned action arose directly from actions taken against Chaplain Klingenschmitt and was raised on the Senate floor by Senator John Warner (R-VA) on September 19, 2006. Senator Warner further revealed a promise made by then Secretary of Defense Donald Rumsfield, to "not enforce" and "hold in abeyance" any enforcement of SECNAVINST 1730.7C.

### LXVIII.

On September 25, 2006, after the Navy discredited him with his own religious community, Chaplain Klingenschmitt voluntarily resigned from the Evangelical Episcopal Church effective October 1, 2006.

### LXIX.

The Department of Defense Inspector General declined to investigate on September 27, 2006. The Inspector General also felt that language used by Chaplain Klingenschmitt on his web site was intemperate and that he was not threatened with unfavorable personnel actions.

### LXX.

On September 29, 2006, Chaplain Klingenschmitt joined the Chaplaincy of Full Gospel Churches(CFGC) receiving their ordination and ecclesiastic endorsement.

### LXXI.

An ecclesiastic endorsement is required for affiliation in the Chaplain's Corps.

### LXXII.

On September 29, 2006, the Chief of Naval Personnel suspended Chaplain

14

Klingenschmitt from performing duties as a Chaplain effective October 1, 2006, despite the pending request for the recertification based on his new endorsement.

## LXXIII.

On October 1, 2006, two days after the effective date of the CFGC endorsement, the Evangelical Episcopal endorsement lapsed.

## LXXIV.

Chief of Naval Operations (OPNAVINST) 1120.9 requires the Chief of Navy Chaplains to "recertify a chaplain's professional qualifications upon receipt of a new ecclesiastical endorsement."

## LXXV.

The Navy convened a Chaplain's Appointment and Recall Eligibility Advisory group (CARE Board) to review Chaplain Klingenschmitt's case.  On October 14, 2006, he repeated his request for recertification as a Chaplain based on the CFGC endorsement.  That recertification was denied.

## LXXVI.

On October 17, 2006, President Bush signed the 2007 Defense Authorization Act with the conference report directing the Navy to rescind their recent "non-sectarian" prayer policies. The President's signature on the 2007 Defense Authorization Act rescinded the policies of SECNAVINST 1730.7C.

## LXXVII.

On November 21, 2006, the Secretary of the Navy Donald C. Winter formally rescinded SECNAVINST 1730.7C.

### LXXVIII.

The enactment of the 2007 Defense Authorization Act should have voided the court-martial conviction since the underlying regulation designed to prohibit Chaplain Klingenschmitt's public worship was invalidated by order of Congress.

### LXXIX.

On October 25, 2006, Chaplain Klingenschmitt filed suit in the District of Columbia District Court asking that he not be separated from the Navy. The basis for this complaint was that the Navy did not have the authority to refer his case to the CARE Board. The court denied injunctive relief.

### LXXX.

On December 22, 2006, Chaplain Klingenschmitt's counsel submitted a clemency request to the convening authority which included the Secretary of the Navy's action rescinding SECNAVINST 1730.7C.

### LXXXI.

On January 2, 2007, subsequent to the signing of the 2007 Defense Authorization Act, and the Secretary of the Navy's cancellation of SECNAVINST 1730.7C the convening authority approved the actions of the court-martial.

### LXXXII.

On January 3, 2007, Rear Admiral Ruehe signed a punitive letter of reprimand, despite the rescinding of SECNAVINST 1730.7C.

### LXXXIII.

On January 4, 2007, the United States District Court for the District of Columbia denied

Chaplain Klingenschmitt's request for injunctive relief on the basis of a failure to show that a discharge would cause him irreparable harm.

### LXXXIV.

March 1, 2007, Chaplain Klingenschmitt was involuntarily separated from the Navy with an honorable discharge with almost 16 years of active duty military service.

### LXXXV.

On August 22, 2007, Judge Kennedy of the United States District Court for the District of Columbia dismissed Chaplain Klingenschmitt's suit noting that although the CARE Board could be convened, the court was not deciding whether the actions of the CARE board were legitimate or that the board was conducted properly. The court also found that Chaplain Klingenschmitt alleged no personal harm and therefore lacked standing [this was not a Tucker Act/Military Pay Act case] and that there was no prospective threat alleged due to Chaplain Klingenschmitt's discharge from active duty.

### LXXXVI.

Chaplain Klingenschmitt filed a petition with the Navy's Board for Correction of Naval Records (BCNR) requesting the removal of his January 31, 2005 fitness report.   It was assigned docket number 01819-08.

### LXXXVII.

Chaplain Klingenschmitt could not appeal his conviction pursuant to 10 U.S.C. § 866. Nor could he seek relief from military courts via a writ of *error coram nobis* or other writ under the All Writs Act. 28 U.S.C. 1651.

17

LXXXVIII.

On March 25, 2008, the Navy Personnel Command provided a negative advisory opinion.

LXXXIX.

On May 6, 2008, Chaplain Klingenschmitt provided a response to the advisory opinion.

XC.

On June 6, 2008, the BCNR denied Chaplain Klingenschmitt's petition.

XCI.

Chaplain Klingenschmitt again petitioned the BCNR for relief concerning his January 31, 2006 fitness report, which was assigned docket number 01261-09.

XCII.

On March 25, 2009, the Navy Personnel Command submitted an adverse Advisory Opinion.

XCIII.

On April 23, 2009, Chaplain Klingenschmitt submitted a response to the Advisory Opinion.

XCIV.

On May 7, 2009, the BCNR denied Chaplain Klingenschmitt's request for relief in docket number 01261-09.

XCV.

On July 21, 2009, Chaplain Klingenschmitt requested a department of Defense review of the BCNR decision in docket number 01261-09 under the whistleblower statute.

XCVI.

On June 16, 2010, Chaplain Klingenschmitt requested the BCNR reconsider their denial of his petition.

XCVII.

On June 29, 2010, the Undersecretary of Defense sustained the BCNR action.

XCVIII.

On August 11, 2010, the BCNR denied Chaplain Klingenschmitt's request for reconsideration.

XCIX.

On July 15, 2008, Captain Klingenschmitt requested a review of his conviction by the Judge Advocate General of the Navy pursuant to 10 U.S.C. § 869(b).

C.

On June 15, 2009, the Judge Advocate General of the Navy denied relief under 10 U.S.C. § 869(b). This was an administrative review by the Navy's Chief Prosecutor, the Judge Advocate General of the Navy.

CI.

On June 16, 2010, Chaplain Klingenschmitt requested the BCNR to reconsider its decision in docket number 01819-08 concerning his January 31, 2005 fitness report.

CII.

On August 11, 2010, the BCNR denied Chaplain Klingenschmitt's request for reconsideration as to docket number 01819-08.

CIII.

The inability to seek review from a properly constituted appellate court denied Chaplain

Klingenschmitt due process under the Fifth Amendment to the United States Constitution.

CIV.

The administrative review under 10 U.S.C. § 869 was not supported by the law or facts.

CV.

Chaplain Klingenschmitt refused political correctness to practice his religion and to

minister to his flock.

CVI.

The First Amendment to the Constitution of the United States guarantees the free exercise

of religion.

CVII.

Chaplain Klingenschmitt was discriminated against because of the practice of his

religion, specifically praying in Jesus' name and quoting the Bible.

CVIII.

The Navy in the now rescinded SECNAVINST 1730.7C,  tried to establish a general

religion to the exclusion of the individual religious beliefs and denominations of their individual

chaplains.

CIX.

Religious discrimination and Establishment Clause challenges, even in the military, are

subject to the strict scrutiny standard, not a deferential standard, since these policies were not

operational, strategic or tactical, and the mere fact of military context is insufficient to require

deference. *Adair v. England*, 183 F.Supp.2d 31 (D. D.C.2002).

## CX.

The order that Chaplain Klingenschmitt was accused of violating at his court-martial, was drawn from the defunct and unconstitutional SECNAVINST 1730.7C.

## CXI.

The order that Chaplain Klingenschmitt was accused of violating at his court-martial was not a lawful order.

## CXII.

Although unlawful, Chaplain Klingenschmitt did not violate the order and the evidence was legally and factually insufficient to convict him.

## CXIII.

The court-martial and administrative process was permeated with unlawful command influence in violation of 10 U.S.C. § 837 and the Manual for Courts-Martial (Executive Orders 12473, 12550, 2586, 12708, 12767, 12888, 12936, EO 12960, 13086, 13140, 13262, 13365, 13387, 13430 and 13447, specifically Rule for Court-Martial (R.C.M.) 104.

## CXIV.

The unlawful command influence was a violation of the due process clause of the Fifth Amendment to the United States Constitution.

## CXV.

Pursuant to 10 U.S.C. § 6031(a), an officer in the Chaplain Corps may conduct public worship according to the manner and forms of the church of which he is a member.

CXVI.

Public worship is any form of religious service showing reverence for the Divine Being or observance of the rites and ordinances of a religious organization in a public place without concealment.

CXVII.

Chaplain Klingenschmitt was engaging in public worship when he prayed in Lafayette Park.

CXVIII.

The January 31, 2005 and January 31, 2006 fitness reports, the order that Chaplain Klingenschmitt was accused of violating, the preferral and referral of court-martial charges, the abortive attempt to separate Chaplain Klingenschmitt in March of 2006, the delay in acting on his augmentation request, the actions of the CARE Board, the letter of reprimand and his separation from active duty are violations of 10 U.S.C. § 6031.

CXIX.

The Religious Freedom Restoration Act, (RFRA) 42 U.S.C. 2000-bb, prohibits the government from substantially burdening a person's exercise of religion unless it is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

CXX.

SECNAVINST 1730.7C facially and as applied to Chaplain Klingenschmitt was a violation of RFRA.

CXXI.

The order Chaplain Klingenschmitt was accused of disobeying was a violation of RFRA.

CXXII.

The January 31, 2005 and January 31, 2006 fitness reports, the order that Chaplain Klingenschmitt was accused of violating, the preferral and referral of court-martial charges, the abortive attempt to separate Chaplain Klingenschmitt in March of 2006, the delay in acting on his augmentation request, the actions of the CARE Board, the letter of reprimand and his separation from active duty were a violation of RFRA.

CXXIII.

Department of Defense (DOD) Directive 1350.2 prohibits discrimination on the grounds of religious belief or practice.

CXXIV.

SECNAVINST 1730.7C facially and as applied to Chaplain Klingenschmitt was a violation of DOD Directive 1350.2.

CXXV.

The January 31, 2005 and January 31, 2006 fitness reports, the order that Chaplain Klingenschmitt was accused of violating, the preferral and referral of court-martial charges, the abortive attempt to separate Chaplain Klingenschmitt in March of 2006, the delay in acting on his augmentation request, the actions of the CARE Board, the letter of reprimand and his separation from active duty were a violation of DOD Directive 1350.2.

CXXVI.

The January 31, 2005 and January 31, 2006 fitness reports were a violation of DOD

23

Directive 1350.2.

## CXXVII.

DOD Directive 7050.06 codifies the Military Whistleblower Act 10 U.S.C. §1034 and makes it DOD policy that (1) members of the Armed Forces shall be free to make protected communications; (2) no person shall restrict a member of the Armed Forces from making lawful communication; (3) members of the Armed Forces shall be free from reprisal for making or preparing to make a protected communication; (4) no person may take or threaten to take an unfavorable personnel action, or withhold or threaten to withhold a favorable personnel action, in reprisal against any member of the Armed Forces for making or preparing to make a protected communication (5) personnel violating this policy are subject to discipline via the Uniform Code of Military Justice or the civil service discipline system.

## CXXVIII.

The actions taken against Chaplain Klingenschmitt, including his January 31, 2005 and his January 31, 2006 fitness reports, the order he was accused of violating, the abortive March 2006 attempt to release him from active duty, the delay in acting on his augmentation request, the preferral and referral of court-martial charges, the court-martial conviction, the actions of the CARE Board, the letter of reprimand and his separation from active duty were negative personnel actions taken in reprisal for protected communications in violation of DOD Directive 7050.06.

## CXXIX.

Secretary of the Navy (SECNAV) Instruction 5370.7C implements DOD Directive 7050.06 within the Department of the Navy and broadens the policy to reflect that members of

the Department of the Navy shall be free to make a protected communication to a Member of

Congress. an IG, a member of a DoD audit, inspection, investigation, or law enforcement

organization, any person or organization in the chain of command or any other person or

organization designated pursuant to command regulations or other established administrative

procedures for such communications without fear of reprisal and makes violation of this policy

punishable under the Uniform Code of Military Justice or appropriate civil service regulations.

CXXX.

The January 31, 2005 and January 31, 2006 fitness reports, the order that Chaplain

Klingenschmitt was accused of violating, the preferral and referral of court-martial charges, the

abortive attempt to separate Chaplain Klingenschmitt in March of 2006, the delay in acting on

his augmentation request, the actions of the CARE Board, the letter of reprimand and his

separation from active duty were negative personnel actions taken in reprisal for protected

communications in violation of SECNAVINST 5370.7C.

CXXXI.

A prayer constitutes protected speech. *Good News Club v. Milford Cent. Sch.,* 533 U.S.

98, 110, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001) and as such is considered a protected

communication.

CXXXII.

The United States Navy, in trying to establish a unitarian and pluralistic religion are in

violation of the Establishment Clause of the First Amendment of the United States Constitution.

CXXXIII.

Chaplain Klingenschmitt upheld his oath to the Constitution of the United States and his

25

responsibility to God in resisting the establishment of the unitarian and pluralistic religion.

### CXXXIV.

The January 31, 3005 and January 31, 2006 fitness reports, the abortive March 2006 attempt to release him from active duty, the order Chaplain Klingenschmitt was accused of violating, the delay in acting on his augmentation request, the preferral and referral of court-martial charges, the court-martial conviction, the action of the CARE board, the letter of reprimand and his separation from active duty were designed to further the Navy's attempt to establish a unitarian and pluralistic religion by eliminating Klingenschmitt from the Chaplain Corps.

### CXXXV.

The actions taken against Chaplain Klingenschmitt, including his January 31, 2005 and his January 31, 2006 fitness reports, the order he is accused of violating, the abortive March 2006 attempt to release him from active duty, the delay in acting on his augmentation request, the preferral and referral of court-martial charges, the court-martial conviction, the lack of appellate review pursuant to 10 U.S.C. § 866, the actions of the CARE Board, the letter of reprimand and his separation from active duty were taken in violation of his rights under the Free Exercise Clause of the First Amendment to the Constitution of the United States.

### CXXXVI.

The actions taken against Chaplain Klingenschmitt, including his January 31, 2005 and his January 31, 2006 fitness reports, the order he is accused of violating, the abortive March 2006 attempt to release him from active duty, the delay in acting on his augmentation request, the preferral and referral of court-martial charges, the court-martial conviction, the actions of the

26

CARE Board, the letter of reprimand and his separation from active duty were taken in violation
of his rights under the Free Speech Clause of the First Amendment to the Constitution of the
United States.

### CXXXVII.

The January 31, 2005 and January 31, 2006 fitness reports, the order that Chaplain
Klingenschmitt was accused of violating, the preferral and referral of court-martial charges, the
abortive attempt to separate Chaplain Klingenschmitt in March of 2006, the delay in acting on
his augmentation request, the actions of the CARE Board, the letter of reprimand and his
separation from active duty were taken in violation of his rights under the Petitions Clause of the
First Amendment to the Constitution of the United States.

### CXXXVIII.

Chaplain Klingenschmitt possesses a property interest in his military career pursuant to
SECNAVINST 1920.6C paragraph 6 that recognizes commissioned officers have "acquired a
legal status that continues until it is terminated through a specific, legally authorized process."

### CXXXIX.

Chaplain Klingenschmitt possesses a liberty interest in his military career, his right to free
speech, his right to free exercise of his religion, his right to petition the government and his right
to be free of a unitarian pluralistic religion established by the United States government.

### CXL.

The January 31, 2005 and January 31, 2006 fitness reports, the order that Chaplain
Klingenschmitt was accused of violating, the preferral and referral of court-martial charges, the
abortive attempt to separate Chaplain Klingenschmitt in March of 2006, the delay in acting on

his augmentation request, the actions of the CARE Board, the letter of reprimand and his separation from active duty were taken in violation of his rights under the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

### CXLI.

The actions of the court-martial convening authority, the CARE Board and the authors of the January 31, 2005 and January 31, 2006 fitness reports were arbitrary and capricious, unsupported by substantial evidence and contrary to the Constitution, laws and regulations of the United States.

### CXLII.

The actions of the DOD Inspector General in not conducting a proper inquiry into Chaplain Klingenschmitt's complaint were arbitrary and capricious, unsupported by substantial evidence and contrary to the Constitution, laws and regulations of the United States.

### CXLIII.

The actions of the Secretary of the Navy in approving Chaplain Klingenschmitt's separation and in denying his complaint of wrongs forwarded under 10 U.S.C. § 938 were arbitrary and capricious, unsupported by substantial evidence and contrary to the Constitution, laws and regulations of the United States.

### CXLIV.

The actions of the BCNR in not correcting Chaplain Klingenschmitt's record were arbitrary and capricious, unsupported by substantial evidence and contrary to the Constitution, laws and regulations of the United States, including but not limited to their enabling statute, 10 U.S.C. § 1552.

CXLV.

The actions of the Under Secretary of Defense in sustaining the decision of the BCNR were arbitrary and capricious, unsupported by substantial evidence and contrary to the Constitution, laws and regulations of the United States.

CXVI.

Chaplain Klingenschmitt is not required to seek relief from the Board for Correction of Naval Records and has specifically chosen not to file additional petitions with that organization.

CXVII.

Resort to the Board for Correction of Naval Records is considered to be futile in light of the actions of the Secretary of the Navy since the Secretary must approve any decision of the Board.

CXVIII.

Chaplain Klingenschmitt has exhausted all administrative remedies.

WHEREFORE PLAINTIFF PRAYS that this court:

1.     Award him pay and allowances and benefits for the grade of O-3 commensurate with his time in service, retroactive to his separation date.

2.     Incident to the monetary claim, order plaintiff restored to active duty in the grade of Lieutenant retroactive to his separation date.

3.     Incident to the monetary claim, remove all references to his January 31, 2005 and January 31, 2006 fitness reports, the court-martial action and the CARE Board from his service record.

4.     Vacate the court-martial conviction and remove the letter of reprimand from his

service record.

5.      In the alternative, incident to the monetary claim, if retirement eligible, order that
he be retired  retroactive to the date of retirement eligibility.

6.      Award him all retirement pay commensurate with his pay grade and time in
service, retroactive to his retirement eligibility date.

7.      Any other action which the court deems to be just and equitable.

8.      Costs of this action.

9.      Attorney's fees pursuant to the Equal Access to Justice Act.

Respectfully Submitted,

John B. Wells
Attorney for the Plaintiff
LA Bar #23970
Post Office Box 5235
Slidell, LA 70469-5235 (mail)
769 Robert Blvd, Suite 201D
Slidell, LA 70458 (physical)
985-641-1855
985-649-1536 (fax)
JohnLawEsq@msn.com